THE PRUDENTIAL INSURANCE COMPANY OF AMERICA *vs*.
BOARD OF APPEALS OF WESTWOOD.

Norfolk.    November 13, 1986. — December 29, 1986.

Present: GREANEY, C.J., DREBEN, & FINE, JJ.

*Zoning*, Site plan approval, Judicial review. *Witness*, Expert.

In exercising its power under a town's zoning by-law to approve the site
plan for a proposed office building in a zoning district in which office
use was permitted as of right and was not subject to the grant of a special
permit, a board of appeals did not have discretionary power to deny
approval so long as the specific area and use criteria stated in the by-law
were satisfied, but instead was limited to imposing reasonable terms and
conditions on the proposed use. [280-282]

In a proceeding under G. L. c. 40A, § 17, for judicial review of a decision
by a town's zoning board of appeals denying approval of a site plan
submitted in connection with a use permitted as of right, the judge was
not required to give deference to the board's decision, but acted properly
in considering the proposal anew and, on the basis of all the evidence
before him, was warranted in finding that the plan had made adequate
provision for vehicular and pedestrian traffic as required by a provision
of the zoning by-law. [282-284]

Where, in a proceeding for judicial review of a decision by a town's board
of appeals denying approval of a site plan submitted in connection with
a use permitted as of right, the judge accepted as satisfactory the traffic
proposals which had been considered and rejected by the board, any
error by the judge in his consideration of proposals *not presented to the
board previously was harmless. [284-285]

In a proceeding for judicial review of a decision by a town's board of
appeals denying approval of a site plan, the judge acted within his
discretion in refusing to qualify a town police sergeant as an expert on
traffic conditions at the site. [285]

CIVIL ACTION commenced in the Superior Court Department
on May 27, 1983.

The case was heard by *Andrew G. Meyer, J.*

*Thomas P. McCusker, Jr.,* Town Counsel, for the Board of Appeals of Westwood.

*John Kenneth Felter* for the plaintiff.

GREANEY, C.J. The board appeals from a judgment of the Superior Court annulling its decision to deny Prudential's application for site plan approval to construct two four-story office buildings in a zoning district in which office use is permitted as of right. (An earlier aspect of the case was decided at 18 Mass. App. Ct. 632 [1984].) The board based its decision solely on the ground (as cast in terms of § 10A[e] [3] of the town's zoning by-law) that Prudential "has not reasonably assured . . . that its proposed site development has made adequate provision for the convenience of vehicular and pedestrian movement within the site and in relation to adjacent streets, property and improvements."

Prudential sought review of the board's decision in the Superior Court pursuant to the provisions of G. L. c. 40A, § 17. The parties stipulated that the buildings will contain 285,000 square feet of office space, with related parking facilities; that they will cover 4.2% of the 39.5 acres of land on which they will be situated; and that traffic from the site will feed principally into Route 109 in Westwood, an interchange for Route 128, Boston's major circumferential highway. It was also found that the office use contemplated by Prudential is permitted as of right in the A-R-O zoning district,[1] the least restrictive zoning district in Westwood, and that Prudential's site plan, required by § 10A(d) of the Westwood zoning by-law, had received approval from the town's planning board and the other municipal agencies required to pass upon it, including approval by the board of appeals of all requirements for such a site plan other than the requirement imposed by § 10A(e) (3).[2]

---

[1] A-R-O is the by-law's acronym for an administrative-research-office zoning district, which in § 10A(b) of the by-law permits as of right "(1) office uses primarily involving . . . accounting . . . financial services . . . [and] (2) [o]ther administrative uses . . . ."

[2] This provision requires that the site plan show "adequate provision for the convenience of vehicular and pedestrian movement within the site, and in relation to adjacent streets, property or improvements."

With the case so focused, a judge of the Superior Court conducted a lengthy trial (over the better part of eighteen days) directed exclusively to the issue of traffic. The evidence at the trial consisted of testimony from numerous witnesses, including extensive testimony from traffic consultants, qualified as expert witnesses, in support of and in opposition to the traffic designs and proposals tendered by Prudential in connection with its site plan.[3] After the trial, the judge entered an eighty-six page decision containing seventy-five pages devoted to findings of fact. These findings exhaustively deal with all aspects of the traffic question. The judge concluded that Prudential's application for site plan approval met the requirement of § 10A(e) (3) as to traffic, see note 2, *supra,* and, as a consequence, that the board's decision exceeded its authority. Judgment entered annulling the board's decision and remanding the case to the board "to approve Prudential's site plan application, and to only impose reasonable conditions, if any, upon the proposed use which are not inconsistent with the . . . [court's] findings and rulings." Jurisdiction was retained for any further proceedings that might be necessary.

1. The board argues that the site plan approval in this case involves a proceeding analogous to an application for a special permit, and that the judge failed to take into account the discretion conferred on a local zoning board in passing upon such an application. The board directs attention to decisions holding that, in special permit cases, a court cannot substitute its judgment for that of the board, see, e.g., *Gulf Oil Corp.* v. *Board of Appeals of Framingham,* 355 Mass. 275, 277-278 (1969), and cannot annul a board's decision absent a conclusion that the decision is "based on a legally untenable ground, or [was] unreasonable, whimsical, capricious or arbitrary." *Golden* v. *Selectmen of Falmouth,* 358 Mass. 519, 523 (1970). The board maintains the position "that it has considerable discretion in reviewing the site plan application."

The argument misconceives the limited nature of the regulation. The Westwood by-law carefully delineates between uses

---

[3] The judge also took a view of the site and surrounding locale, with an eye towards the parties' contentions as to the traffic question.

permitted as of right (as provided for in § 10A[b]),[4] and uses allowed only upon compliance with the requirements for a traditional special permit (as provided for in § 10A[c]).[5] The latter category comprehends uses which are considered desirable but which, unless conditioned, might be incompatible with the zoning in the district.[6] Prudential's use is clearly one permitted as of right, and the by-law makes clear that uses permitted as of right are not subject to the issuance of a special permit, as are the uses described in note 5, *supra*. It has been settled since the decision in *SCIT, Inc.* v. *Planning Bd. of Braintree,* 19 Mass. App. Ct. 101 (1984), that a use allowed as of right cannot be made subject to the grant of a special permit inasmuch as the concepts of a use as of right and a use dependent on discretion are mutually exclusive. See also cases discussed in the *SCIT, Inc.,* decision at 110 n.16. As we said in that decision (at 110): "We see no escape from the conclusion that [a by-law's] purported conditioning of all uses [allowed as of right] in a business district on a special permit exceeds the scope of the delegation fixed by the unambiguous language of § 9 [of G. L. c. 40A]." The board has ignored the decision. (By coincidence, the rejection in the *SCIT, Inc.,* case also involved a problem with traffic.) We think the quoted language disposes of the board's argument and indicates that, in general, "if the specific area and use criteria stated in the by-law [are] satisfied, the board did not have discretionary power to deny . . . [approval], but instead was limited to imposing reasonable

---

[4] These uses include, in addition to offices for professional, financial and scientific and research uses, (1) other administrative uses "except those which regularly render services to patrons, customers, clients or members on the premises," and (2) "any use permitted as of right in a [s]ingle [r]esidence [d]istrict."

[5] These uses include medical offices, health care facilities like convalescent or nursing homes, funeral homes, and uses subject to the grant of a special permit in a single residence district.

[6] In both cases, the approval of site plans is justifiable as an informational tool which discloses the specifics of the project, including the proposed location of buildings, parking areas, and other installations on the land, and their relation to existing conditions such as roads, neighboring land uses, public features, and ingress and egress roads.

terms and conditions on the proposed use." 19 Mass. App. Ct. at 105 n.12, 106.

The question remains as to the role of the judge in reviewing a board's decision denying approval of a site plan submitted in connection with a use allowed as of right. Such a review proceeds in accordance with the well-established principles governing judicial review under G. L. c. 40A, § 17.[7] As the issue involves approval of a site plan for a use permitted as of right, the judge inquires whether (in the language of § 10A[e] of the Westwood by-law) the public interest can be protected "to a degree consistent with the reasonable use of the site for the uses permitted . . . in A-R-O districts." The leading case on site approval, in these circumstances, *Y.D. Dugout, Inc.* v. *Board of Appeals of Canton,* 357 Mass. 25 (1970), makes clear (at 31), that this language[8] imposes "regulation of a use rather than its prohibition." Thus, the judge was not required, as he would have been if a special permit had been in issue, simply to ascertain whether there was "sufficient basis to warrant [the board's] decision." *Humble Oil & Ref. Co.* v. *Board of Appeals of Amherst,* 360 Mass. 604, 606 (1971). Nor was his analysis confined by the principle that "[i]t is the board's evaluation of the seriousness of the problem, not the judge's,

---

[7] These principles have been variously stated but involve at least the following: "In a word, the matter is heard de novo and the judge makes his own findings of fact, independent of any findings of the board . . . ." *Bicknell Realty Co.* v. *Board of Appeal of Boston,* 330 Mass. 676, 679 (1953). The judge is not confined to hearing only the evidence before the board. *Ibid.* Such review "confines the function of the court to its usual and proper function of applying established law to established facts." *Pendergast* v. *Board of Appeals of Barnstable,* 331 Mass. 555, 559 (1954). "The decision of the board is no more than the report of an administrative body and on appeal has no evidentiary weight." *Devine* v. *Zoning Bd. of Appeals of Lynn,* 332 Mass. 319, 321 (1955). "[T]he judge . . . is to . . . determine the legal validity of the decision of the board upon the facts found by him . . . ." *Lawrence* v. *Board of Appeals of Lynn,* 336 Mass. 87, 89 (1957). See also *Josephs* v. *Board of Appeals of Brookline,* 362 Mass. 290, 295 (1972); *Garvey* v. *Board of Appeals of Amherst,* 9 Mass. App. Ct. 856 (1980).

[8] Indeed, the drafters of the Westwood by-law appear to have used language practically identical to the language of the Canton by-law analyzed in the *Y.D. Dugout* decision.

which is controlling." *Copley* v. *Board of Appeals of Canton,* 1 Mass. App. Ct. 821 (1973). See *Subaru of New England, Inc.* v. *Board of Appeals of Canton,* 8 Mass. App. Ct. 483, 486-488 (1979). The judge was essentially to examine the proposal to see if the traffic problem was so intractable that it could admit of no reasonable solution. Short of independently finding that, he was not obliged to give deference to the board's decision.

The judge in this case proceeded in this fashion. He considered all the evidence without regard to the weight given by the board to the evidence of the traffic experts. He determined, in a decision supported by exhaustive factual findings, that the view of the traffic situation suggested by Prudential's consultants and their plans to alleviate the board's concerns were sound, rejecting in the process the board's contrary views. He concluded, in substance, that Prudential had made adequate provision for vehicular and pedestrian movement both inside and outside the project. There is ample evidentiary support for the judge's findings. It follows that the judge had sufficient bases (a) for concluding that the board's resolution of the only point in issue, the traffic situation, was unjustified because the board, in effect, had improperly forbidden a permitted use which could be conducted with reasonable conditions, and (b) for annulling the board's decision and ordering the approval of Prudential's site plan subject to such reasonable conditions as the board might impose.[9] We add only that, in approving

---

[9] Our conclusion does not mean that a board authorized to approve site plans is devoid of regulatory power over such plans. A board may lawfully reject a site plan that fails to furnish adequate information on the various considerations imposed by the by-law as conditions of the approval of the plan. See *Auburn* v. *Planning Bd. of Dover,* 12 Mass. App. Ct. 998 (1981). A board also possesses discretion to impose reasonable conditions under a by-law's requirements in connection with approval of a site plan, even if the conditions are objected to by the owner or are the cause of added expense to the owner. See, e.g., the conditions suggested by the planning board of Canton on the site plan before it in the *Y.D. Dugout* decision, as set forth at 357 Mass. at 31 n.7. In some cases, the site plan, although proper in form, may be so intrusive on the interests of the public in one regulated aspect or another that rejection by the board would be tenable. This would typically be a case in which, despite best efforts, no form of reasonable conditions

the traffic plans, the board may impose some or all of the elements of the plan designed to deal with (in the consultants' terms) "the beyond worst case" scenario.

2. The remaining arguments of the board do not require extensive discussion.

(a) The judge received evidence from a traffic consultant retained by Prudential whose proposals had not been presented to the board, although traffic plans in evidence prepared by other experts retained by Prudential had received board consideration. The board contends that the material constituted a new site plan which should have been rejected, or at the least, should have led to the case being remanded for the board's consideration in the first instance of the new proposal. Prudential argues that the information constitutes only added evidence which was open to consideration by the judge under the principle expressed in *Bicknell Realty Co.* v. *Board of Appeals of Boston,* 330 Mass. 676, 679 (1953), that in de novo review under G. L. c. 40A, § 17, a judge is not restricted to the evidence that was before the board. See also *Kirkwood* v. *Board of Appeals of Rockport,* 17 Mass. App. Ct. 423, 426-427 (1984).

We are inclined to think the evidence in dispute falls within the latter principle. However, we need not decide the question whether the new information was so essential to the site plan that fairness required its consideration by the board because the judge made it clear that he found that "*each* site plan introduced by Prudential makes adequate provision for the convenience of vehicular and pedestrian movement within the site, and in relation to adjacent streets, property or improvements in compliance with § 10A(e) (3)" [10] (emphasis supplied).

could be devised to satisfy the problem with the plan and the judge conducting de novo review concurs in that conclusion. See also the discussion in the *SCIT, Inc.,* decision, 19 Mass. App. Ct. at 111 n.17, as to other regulatory tools available in circumstances similar to those considered in this case.

[10] We do not consider the judge's use of the words "site plan" as meaning that a new site plan had been prepared. The record shows that the new expert retained by Prudential for the trial made additional proposals related to the movement of pedestrian and vehicular traffic on the site plan that had originally been submitted.

Thus, the judge accepted as satisfactory the traffic proposals that had been considered by the board, rendering any error in the acceptance of the new proposals harmless. We note also that the judgment does not hold the board to the acceptance of any particular traffic plan but permits the board, in setting conditions, to consider all the information submitted.

(b) The judge's refusal to qualify a Westwood police sergeant as an expert in all phases of the traffic problem is well supported by the rule that "[a] judge . . . has broad discretion to determine whether an expert witness has a proper basis, in terms of adequate information and preparation, to render an opinion on the matter in dispute." *Louise Caroline Nursing Home, Inc.* v. *Dix Constr. Corp.,* 362 Mass. 306, 309 (1972). See *Kapp* v. *Ballantine,* 380 Mass. 186, 192 (1980); *R. H. White Realty Co.* v. *Boston Redev. Authy.,* 3 Mass. App. Ct. 505, 508 (1975); *Wiska* v. *St. Stanislaus Social Club, Inc.,* 7 Mass. App. Ct. 813, 820 (1979); *Edinburg* v. *Merry,* 11 Mass. App. Ct. 775, 777 (1981); *Giannasca* v. *Everett Aluminum, Inc.,* 13 Mass. App. Ct. 208, 211 (1982). We note that the judge allowed the officer to testify as to his personal observations of traffic in and around the site and to state some limited opinions (short of a sweeping opinion) on the potential impact of the proposed project on the traffic situation in the entire area.

*Judgment affirmed.*