530                                30 Mass. App. Ct. 530

V.S.H. Realty, Inc. *v.* Zoning Board of Appeals of Plymouth.

## V.S.H. Realty, Inc. *vs.* Zoning Board of Appeals of Plymouth.

No. 89-P-1164.

Plymouth. January 22, 1991. - May 3, 1991.

Present: Dreben, Gillerman, & Ireland, JJ.

*Zoning*, Judicial review, By-law, Special permit, Conditions.

Two conditions, imposed by a zoning board of appeals in granting a special permit for the construction of a shopping center, and to be performed prior to the issuance of an occupancy permit, were legally untenable, where they involved the widening of a State highway, which was beyond the developer's power to accomplish. [534-535]

Civil action commenced in the Superior Court Department on November 21, 1984.

The case was heard by *Gerald F. O'Neill, Jr.*, J.

*Alan B. Rubenstein* (*Donald R. Pinto, Jr.*, with him) for the plaintiff.

*Barbara J. Saint Andre*, Town Counsel, for the defendant.

Gillerman, J. This is the second presentment in this court of the "complex and detailed" zoning by-law of Plymouth. See *Balas* v. *Zoning Bd. of Appeals of Plymouth*, 13 Mass. App. Ct. 995, 996 (1982). The material facts are not in dispute. In 1983, the zoning board of appeals of Plymouth (board) denied the application of the plaintiff V.S.H. Realty, Inc. (VSH), for a special permit[1] to construct a 160,000

---

[1]Special permits for use variations are authorized by G. L. c. 40A, § 9, as appearing in St. 1975, c. 808, § 3, the first paragraph of which provides as follows: "Zoning ordinances or by-laws shall provide for specific types of uses which shall only be permitted in specified districts upon the issuance of a special permit. Special permits may be issued only for uses which are in harmony with the general purpose and intent of the ordinance or by-law, and *shall be subject to general or specific provisions set forth therein; and such permits may also impose conditions, safeguards and*

square foot shopping center on an 18 acre parcel of land between Summer Street and Samoset Street (U.S. Route 44) in Plymouth. The board denied the application because of the potentially adverse impact on vehicular traffic in the area. In response to the board's decision, VSH reduced the site to 17 acres, reduced the size of the project to 118,000 square feet, and eliminated a projected department store. The second application for a special permit was denied because of the same concern for traffic problems. On April 3, 1985, a judge of the Superior Court annulled the second decision of the board on the ground that the impartiality of one member of the board was impaired by a conflict of interest, and he remanded the matter to the board for reconsideration without the disqualified member.

Following additional hearings after remand, the board granted the special permit,[2] subject to numerous conditions which were required to be satisfied prior to the issuance of an occupancy permit for the project. Upon review again in the Superior Court, which had retained jurisdiction, a second judge concluded that the board had not exceeded its authority. See G. L. c. 40A, § 17.

Two of the conditions, which are at the center of this dispute,[3] had to do with the widening of Route 44, but that

---

*limitations on time or use*" (emphasis added). See note 2 *infra*, for the Plymouth by-law provisions in respect of special permits.

[2]Section 205.02 of the Plymouth zoning by-law provides, in pertinent part, that no special permit shall be granted unless (i) the proposed use is appropriate in the zone and specific site in question; (ii) adequate and appropriate facilities will be provided for proper operation of the use; (iii) there will be no hazard to pedestrians or vehicles; and (iv) there will be no nuisance or adverse effect upon the neighborhood.

[3]The two disputed special conditions are as follows:

"B. Improvements on Samoset Street west of Pilgrim Hill Road to the westernmost point of the petitioner's frontage on Samoset Street, outlined in red on the sketch appended to the letter from the petitioner's attorney received by the Board on October 29, 1984, including straightening the existing roadbed and widening that roadbed, if necessary, outside the limits of development."

"C. Improvements to Samoset Street east of Pilgrim Hill Road, extending from the petitioner's frontage on Samoset Street to the limit of the proposed Route 3 Interchange improvements, which section of

work was beyond the control of VSH; it was to be performed, if at all, by State and municipal authorities. The plaintiff agreed to perform all the remaining conditions which included (at the suggestion of VSH in response to an inquiry from the board) the construction of Pilgrim Hill Road, improvements to the intersections of Pilgrim Hill Road with both Route 44 and Summer Street, and improvements to the intersection of Summer Street and Westerly Road.

The site of the proposed shopping center is within an "arterial commercial" zoning district.[4] Section 401.13 of the zoning by-law of Plymouth states that the intent of the arterial commercial zoning district is "to allow the development on major arteries or highways of appropriate commercial uses of a traffic-oriented or one-stop nature. . . ." This zoning district permits certain uses, such as motels and hotels, as of right; it also permits eight "special permit uses subject to environmental design conditions," one of which is "planned shopping centers."

Section 205.03 of the by-law (i) states that as to projects requiring special permits subject to environmental design conditions (such as shopping centers), the environmental design requirements are *in addition* to the four general requirements applicable to all uses requiring special permits (which we have set out in note 2, *supra*);[5] (ii) provides that the purpose of the environmental design conditions imposed on those uses subject to such conditions is to determine the impact of the project "upon the health, safety and general welfare of the town and its inhabitants due to their location, intensity of use, scale of structures, [and] traffic generation . . ."; (iii)

---

Samoset Street is outlined in red and yellow on the aforementioned sketch, including the widening to three or four lanes of Samoset Street and the straightening of the existing roadbed, as well as the reduction of curb cuts."

[4] The Plymouth by-law establishes four commercial zones: neighborhood commercial; transitional commercial; general commercial; and arterial commercial.

[5] The by-law provides that where environmental design conditions are applicable, the board "shall not grant any special permit unless additional environmental design conditions are satisfied."

establishes nine general standards for the design and evaluation of projects subject to environmental design conditions, including such factors as design and siting of structures, relation of project to the surroundings, and vehicular and pedestrian circulation; and (iv) states that the environmental design conditions "are intended as general tools for use by the board of appeals and planning board in reviewing projects and *are not to be seen as inflexible standards*" (emphasis added).

We have no doubt (and VSH does not argue otherwise) that the standards for environmental design conditions set out in the by-law fall within the authority extended by G. L. c. 40A, § 9 (see note 1, *supra*). See *Balas* v. *Zoning Bd. of Appeals of Plymouth*, 13 Mass. App. Ct. 995, 996 (1982). It is also clear from the board's opinion that the board evaluated the plaintiff's project against the nine general standards required by the environmental design conditions, and it imposed the two conditions in dispute in order to satisfy those standards. Moreover, wrote the board, only by complying with the two conditions imposed as a result of environmental design review would the project be in compliance with the four general requirements for all special permits set out in note 2, *supra*. It is within this context that we must consider the appropriate standard of review, the legality of the two disputed conditions, and the disposition of the case.

1. *The standard of judicial review.* The parties are sharply divided on the standard for the judicial review of the legality of the two disputed conditions. The board, claiming that the standard applicable is whether the board's decision granting the permit is "arbitrary and capricious," cites to *Gulf Oil Corp.* v. *Board of Appeals of Framingham*, 355 Mass. 275, 277-78 (1969), and *Humble Oil & Ref. Co.* v. *Board of Appeals of Amherst*, 360 Mass. 604, 605 (1971), which state that a board decision cannot be sustained if it is based on "legally untenable ground, or is unreasonable, whimsical, capricious or arbitrary." *Ibid.*, quoting from *MacGibbon* v.

*Board of Appeals of Duxbury*, 356 Mass. 635, 639 (1970).[6]
See also *MacGibbon* v. *Board of Appeals of Duxbury*, 369
Mass. 512, 515 (1976).

VSH argues, focusing on the conditions, that the standard
is one of "reasonableness" by analogy to decisions involving
"site plan approval," citing to *Y.D. Dugout, Inc.* v. *Board of
Appeals of Canton*, 357 Mass. 25 (1970), and *Prudential
Ins. Co. of America* v. *Board of Appeals of Westwood*, 23
Mass. App. Ct. 278 (1986). Those decisions involve condi-
tions imposed upon a use allowed *as of right*, see *id.* at 282,
and thus are significantly different from a special permit
case.

There is no need, however, to resolve this dispute between
the parties. Here the conditions cannot be maintained on ei-
ther of the standards put forth.

2. *The legality of the conditions.* It is not disputed that
the required road work can only be done by the governmen-
tal authorities responsible for Route 44, and the performance
of that work — if it is to be done at all — will be a govern-
mental decision beyond the control of VSH. *Board of Ap-
peals of Hanover* v. *Housing Appeals Comm. in the Dept. of
Community Affairs*, 363 Mass. 339, 375 (1973), upon which
the board relies and which involves the required local ap-
proval of a sewage disposal system, is inapposite. It is not
unreasonable to require an applicant to comply with local
law; compliance with law is commonly within the applicant's
power. It is unreasonable to impose a condition the perform-
ance of which lies entirely beyond the applicant's power.
*Caruso* v. *Pastan*, 1 Mass. App. Ct. 28 (1973), upon which
the board also relies, provides no help. There the board re-
quired a sewer connection to a twelve-inch sewer main to be
constructed in Lynn Fells Parkway. The court noted that the
applicant did not complain of that requirement, and the
plaintiffs (nearby land owners) would not be harmed by it.

---

[6]See *SCIT, Inc.* v. *Planning Bd. of Braintree*, 19 Mass. App. Ct. 101,
105 n. 11 (1984), where many additional cases are collected in support of
the proposition that a local board has "broad power . . . in the special
permit area."

Thus the required connection was not a live issue in that case. *Id.* at 30-31 n.4.

Moreover, it is not the special permit that is suspended until the required work is done, but the applicant's certificate of occupancy. Putting to one side the question of the authority of the board to order the suspension of a certificate of occupancy (a doubtful proposition under the provisions of the Plymouth by-law), the condition effectively precludes construction of the project. No rational applicant would build (nor would a rational lender finance) a shopping center knowing beforehand that occupancy would be forbidden until governmental authorities elected to widen Route 44 to the extent "necessary."[7] See *SCIT, Inc.* v. *Planning Bd. of Braintree*, 19 Mass. App. Ct. 101, 110 n.16 (1984) (conditions must not "be used to enforce outright prohibition under the guise of regulation").

We conclude that the two disputed conditions are legally untenable.

3. *The disposition.* The question of disposition remains. This project has been in the hands of the board or the courts since 1983 — far too long. Nevertheless, we are constrained, under authority of *MacGibbon* v. *Board of Appeals of Duxbury*, 369 Mass. at 520, to return this matter to the board for their decision, free of conflicts of interests or legally untenable conditions. See *Lovaco, Inc.* v. *Zoning Board of Appeals of Attleboro*, 23 Mass. App. Ct. 239, 243 (1986).

The judgment is reversed. A new judgment is to be entered annulling the board's decision and remanding the case to the board for further consideration and decision.

*So ordered.*

---

[7] We also note that the work to be done lacks definition. Condition B (see note 3, *supra*) requires "widening . . . [the] roadbed, if necessary." "If necessary" in whose opinion? Condition C refers to a widening of Route 44 by "three or four lanes," leaving it uncertain whether three lanes or four will satisfy the board, if the board is to be the judge. So too, the "reduction of curb cuts" has no meaningful standard. See *Weld* v. *Board of Appeals of Gloucester*, 345 Mass. 376, 378 (1963).