RICHARD P. QUINCY[1] vs. PLANNING BOARD OF
TEWKSBURY; KEVIN C. SULLIVAN & another,[2] interveners.

No. 93-P-1750.

Suffolk. April 10, 1995. - July 31, 1995.

Present: SMITH, GILLERMAN, & IRELAND, JJ.

*Administrative Law*, Exhaustion of remedies. *Land Court*, Jurisdiction.
    *Zoning*, Site plan approval, Judicial review. *Planning Board*.

Under the provisions of a town's zoning by-law, the planning board's de-
    nial of a site plan application constituted a decision by the special per-
    mit granting authority that was directly applicable to the Land Court
    under G. L. c. 40A, § 17. [19-22]
A Land Court judge reviewing a planning board's denial without reasons
    of a site plan application did not err in annulling the board's decision,
    where the use of the site as proposed was permitted as of right [22];
    further, the judge did not err in refusing to remand the matter and in
    granting site plan approval without conditions, where on two previous
    occasions the board had approved the plan, had subsequently added
    conditions later ruled invalid by the Land Court, and then had denied
    the application with no reasons stated [22-23].
A Land Court judge correctly ruled that a planning board had acted in
    bad faith in denying approval of a site plan for a use that was permit-
    ted as of right. [23-24]

CIVIL ACTION commenced in the Land Court Department
on February 25, 1992.

The case was heard by *Robert V. Cauchon*, J., and a mo-
tion for a new trial was heard by him.

*Deborah A. Conley* for the interveners.

*Miriam A. Widmann* for the plaintiff.

IRELAND, J. The interveners (First Colonial) appeal from a
judgment of the Land Court granting site plan approval

_____

[1]As general partner of Silver Leaf Limited Partnership.

[2]Edward N. Bowley, Jr., together doing business as First Colonial, a
partnership.

without conditions to the plaintiff (Silver Leaf) for Silver Leaf's proposed expansion of a shopping center.[3] The Land Court judgment annulled the planning board's decision denying site plan approval and also awarded Silver Leaf legal costs under G. L. c. 40A, § 17, fourth par. We also rule that the Land Court had jurisdiction to enter a judgment granting Silver Leaf zoning relief.

The locus is a forty-acre parcel of land bordering Main Street in Tewksbury. Silver Leaf, the parcel's owner, proposed to expand an existing 60,000 square-foot shopping center to include an additional 130,000 square feet of retail space, the expanded center to be known as Heath Brook Plaza. In February, 1989, the planning board, acting as the special permit granting authority under § 4.11 of the town's zoning by-law, approved Silver Leaf's site plan for Heath Brook Plaza. Subsequently, Silver Leaf secured Shaw's Supermarket as a future tenant. At Shaw's request, minor modifications were made to the site plan, which was then resubmitted to the planning board for its approval. The planning board was shown a rendering of Heath Brook Plaza designating Shaw's as one of the anchor stores. The planning board's engineering consultant recommended approval of the minor changes in the revised site plan. In July, 1990, the planning board again approved Silver Leaf's site plan application but imposed additional conditions, not present on the first approval, requiring that Silver Leaf make certain off-site road improvements to portions of Route 38 not adjacent to the property.

Silver Leaf appealed from the decision with new conditions to the Land Court and also sought a declaration that the proposed shopping center expansion could not be subject to special permit requirements, as the retail business uses planned there were allowed as of right within the zoning district. In a decision dated August 5, 1991 (not under appeal here), the Land Court judge held that the conditions exceeded the plan-

---

[3]Following entry of the appeal in this court, the planning board filed a stipulation of dismissal of its appeal. We are therefore left with only First Colonial's appeal.

ning board's authority under site plan review and also held "those portions of [§ 4.11 of the by-law that] require the discretionary special permit standards to be applied to the proposed shopping center . . . are void." The matter was remanded to the planning board with the suggestion that site plan review "should probably be limited" to the minor on-site changes already proposed for the previously approved site plan.

Following additional public hearings on the site plan, at which the planning board was again shown a rendering of Heath Brook Plaza indicating a Shaw's Supermarket, the planning board, on February 5, 1992, voted to deny approval. The decision states no reasons for the denial. Silver Leaf timely appealed from the planning board's decision pursuant to G. L. c. 40A, § 17. First Colonial, the owner of commercial property across from the locus, was permitted to intervene. In the decision and judgment that is the subject of this appeal the Land Court judge held that, once again, the planning board's denial exceeded its authority and annulled the decision. Rather than remanding the matter to the planning board for a second time, the Land Court judge granted site plan approval without conditions and also ruled that the planning board had acted in bad faith. Subsequently, Silver Leaf moved for costs, which were awarded in the amount of $1,295.28. The planning board's motion for a new trial was denied. This appeal followed.

1. *Exhaustion of administrative remedies.* First Colonial now raises for the first time a jurisdictional question, arguing that Silver Leaf's proper recourse as a "person aggrieved" was first to appeal the planning board's decision to the town's board of appeals, pursuant to G. L. c. 40A, §§ 8 and 14, before seeking judicial review pursuant to § 17. Silver Leaf's failure to exhaust administrative remedies, according to First Colonial, meant that the matter was not properly before the Land Court and that the resulting judgment, therefore, is invalid. Hence, First Colonial urges us to dismiss the action leaving Silver Leaf to begin the entire appeal process anew. Though not raised below, we address the question.

The statutorily required submission of zoning disputes to local authority is so central to the architecture of G. L. c. 40A that we have required the exhaustion of administrative remedies as a prerequisite to judicial review. See *William C. Bearce Corp.* v. *Building Inspector of Brockton*, 11 Mass. App. Ct. 930, 931 (1981); *McDonald's Corp.* v. *Seekonk*, 12 Mass. App. Ct. 351, 353 (1981). Within the zoning context, therefore, principles of exhaustion require that a person aggrieved by the action of a local zoning administrator (the building inspector in most municipalities) must first attempt to redress the grievance through the local board of appeals before seeking judicial review. See G. L. c. 40A, §§ 8, 13, 14, and 17; *Neuhaus* v. *Building Inspector of Marlborough*, 11 Mass. App. Ct. 230 (1981). See also G. L. c. 40A, § 7, as inserted by St. 1975, c. 808, § 3 ("[n]o action, suit or proceeding shall be maintained in any court . . . except in accordance with the provisions of this section, section eight and section seventeen").

As noted above, the Land Court judge in a 1991 judgment decided that, since the shopping center use was allowed as of right, those portions of § 4.11 of the by-law that required the application of discretionary special permit standards by the planning board were void.[4] From this, First Colonial argues, we think mistakenly, that the issuance of a special permit by the planning board was not called for — "[t]he site plan review process was a condition precedent to a building permit, not a . . . special permit" — and the planning board was therefore not acting as a "special permit granting authority." Since the only decisions of the planning board that are appealable to the courts directly are those in which the plan-

---

[4]Where, as here, "the specific area and use criteria stated in the by-law [are] satisfied, the [planning] board [does] not have discretionary power to deny . . . [approval], but instead [is] limited to imposing reasonable terms and conditions on the proposed use." *Prudential Ins. Co.* v. *Board of Appeals of Westwood*, 23 Mass. App. Ct. 278, 281-282 (1986), quoting from *SCIT, Inc.* v. *Planning Bd. of Braintree*, 19 Mass. App. Ct. 101, 105 n.12 (1984). See also *Y.D. Dugout, Inc.* v. *Board of Appeals of Canton*, 357 Mass. 25, 29-31 (1970). In short, the planning board is confined to "regulation of a use, rather than its prohibition." *Prudential Ins. Co.*, 23 Mass. App. Ct. at 282.

ning board has acted as a "special permit granting authority,"[5] the planning board's disapproval of the site plan had to be run through the board of appeals.

Section 4.11 of the by-law, pertaining to site plan special permits, however, contains no separate provision that calls for more limited site plan review of uses available as of right not requiring a special permit. Contrast *McDonald's Corp.* v. *Seekonk*, 12 Mass. App. Ct. at 352 (parking plan had to be submitted for approval by planning board before a building permit — not a special permit — could be issued). Section 4.11 details various procedural and substantive requirements for site plan special permits. The 1991 Land Court judgment that invalidated some of the *substantive* requirements of § 4.11 did not have the effect of rendering the entire site plan special permit by-law invalid. When passing on the validity of a particular ordinance or by-law, a reviewing court should strike only the offending provisions, leaving the remainder intact if, as here, the nonoffending provisions contain a clear expression of the planning board's authority to issue special permits. *Gage* v. *Egremont*, 409 Mass. 345, 349 (1991), citing *Del Duca* v. *Town Admr. of Methuen*, 368 Mass. 1, 13 (1975).

We hold, therefore, that the *procedural* framework of § 4.11 of the by-law, including the designation of the planning board as a special permit granting authority, survived the 1991 Land Court judgment intact. Site plan special permit applications should be handled in exactly the same manner as they were prior to the 1991 judgment, except that where the proposed use is one permitted by right the planning board may only apply substantive criteria consistent with *Prudential Ins. Co.* v. *Board of Appeals of Westwood*, 23 Mass. App. Ct. 278 (1986) (i.e., it may impose reasonable terms and conditions on the proposed use, but it does not have discretionary power to deny the use). Approval of a site

---

[5]General Laws c. 40A, § 17, as amended through St. 1989, c. 649, § 2, provides in pertinent part that "[a]ny person aggrieved by a decision of the board of appeals *or any special permit granting authority* . . . may appeal to the land court . . . ." (emphasis supplied).

plan special permit application under these circumstances would still lead to the issuance of a special permit by the planning board as the designated special permit granting authority under § 4.11. Conversely, denial of a site plan application constitutes a decision by the special permit granting authority, which is directly appealable under G. L. c. 40A, § 17. The Land Court had jurisdiction to hear the matter.

2. *Annulment of the planning board's decision and the grant of site plan approval without conditions.* Since the site plan involved a permitted use, the judge's proper role at trial was to inquire whether the public interest could be protected to a degree consistent with the reasonable use of the locus for retail business purposes. See *Prudential Ins. Co.* v. *Board of Appeals of Westwood*, 23 Mass. App. Ct. at 281-282. The judge correctly ruled that, in denying the application without reasons, the board had made no effort to impose reasonable and appropriate conditions on the permitted use. More important, the board presented no competent evidence at trial, either through a properly qualified expert or an independent traffic study, of a traffic problem "so intractable that it could admit of no reasonable solution." *Id.* at 283.[6]

There also was no error by the judge in refusing to remand the matter for a second time. In the first remand, the board ignored the judge's suggestion to limit the site plan to minor on-site changes but chose instead to deny the approval outright with no reasons stated for the denial. On two prior occasions, in 1989 and in 1990, the board had approved the site plan but then added conditions to its approval, which the Land Court judge later held invalid. General Laws c. 40A, § 17, second par., as inserted by St. 1975, c. 808, § 3, specifically empowers the court to "make such other decree as justice and equity may require." Where, as here, "there is a record of consistent obstruction of lawful use . . . 'justice and equity would not be served by [another] remand.'" *Newbury Jr. College* v. *Brookline*, 19 Mass. App. Ct. 197,

---

[6]First Colonial's suggestion that there was insufficient evidence presented for the judge to conclude that there was compliance with the site plan review provisions of the by-law is completely without merit.

208 (1985), quoting from *MacGibbon* v. *Board of Appeals of Duxbury*, 369 Mass. 512, 520 (1976).

3. *Bad faith.* The judge's finding of bad faith on the part of the planning board must also have played a part in his decision not to remand for a second time. General Laws c. 40A, § 17, fourth par., as inserted by St. 1975, c. 808, § 3, provides that "[c]osts shall not be allowed against the board or special permit granting authority unless it shall appear to the court that the board or special permit granting authority in making the decision appealed from acted with gross negligence, in bad faith or with malice." In finding that the board acted in bad faith, the judge made subsidiary findings of fact, including that: (1) the site plan "in its essentials" had twice before been approved by the board; (2) the proposed revisions to the site plan were minor in nature, as stated by the board's own engineer; (3) the board failed to follow guidelines given it by the court in the first remand concerning permissible limits of site plan review; (4) the board's concerns about traffic problems were not advanced in good faith as it failed to put forth any credible evidence at trial regarding the likely effect that a supermarket on the site would have on traffic; and (5) the board failed to state reasons for denying the site plan and also failed to propose reasonable conditions that might be attached to approval. The judge's subsidiary findings are amply supported in the record and thus are not clearly erroneous.

The judge's finding that the board acted in bad faith was particularly justified in this instance. The proposed project, which involves a permitted use under the town's by-law, has been side-tracked for more than six years since the site plan was first approved in 1989.[7] Silver Leaf has been at least three times before the planning board, twice before the Land Court, and now before this court. Along the way, Silver Leaf has lost several prospective tenants for the proposed shopping

---

[7]See in this regard, *V.S.H. Realty, Inc.* v. *Zoning Bd. of Appeals of Plymouth*, 30 Mass. App. Ct. 530, 535 (1991), where we noted that a project, similar in many respects to this one, had "been in the hands of the board or the courts since 1983 — far too long."

center. We are also unimpressed by the tactics of First Colonial, the owner of commercial property across from the locus and, therefore, a potential competitor, who has sat back until appeal, only now raising a jurisdictional question designed to send the property owner back to "square one."

*Judgment affirmed.*