840                          65 Mass. App. Ct. 840 (2006)

Castle Hill Apartments Limited Partnership v. Planning Board of Holyoke.

CASTLE HILL APARTMENTS LIMITED PARTNERSHIP & another[1]
vs. PLANNING BOARD OF HOLYOKE.

No. 05-P-43.

Suffolk. October 18, 2005. - March 31, 2006.

Present: RAPOZA, BROWN, & GRAHAM, JJ.

*Zoning,* Appeal, Site plan approval, Conditions. *Practice, Civil,* Zoning appeal.

Discussion of a local planning board's discretion to impose reasonable condi-
tions under a zoning by-law's requirements in connection with the ap-
proval of a site plan, where the proposed use is one permitted by right.
[845-846]

In exercising its power under a local zoning ordinance to approve a site plan
for the proposed construction of five multifamily buildings in a locus
where such a use was permitted as of right, a local planning board (board)
exceeded its authority by imposing a condition requiring the landowner to
completely redesign the interior and exterior of each building to add
multiple entrances, where the board failed to produce any evidence that the
health, safety, convenience, or general welfare of the city, the future
residents of the locus, or the surrounding neighbors would be improved
thereby; where the visual advantages achieved from adding multiple
entrances to the proposed structures were not readily apparent from the
record; and where the proposed condition would profoundly impact the
density of the project. [846-849]

CIVIL ACTION commenced in the Land Court Department on
October 23, 2002.

The case was heard by *Alexander H. Sands,* J., on a motion
for summary judgment.

*John H. Fitz-Gibbon* for the defendant.
*Mark W. Corner* for the plaintiffs.

RAPOZA, J. In this case we address the reasonableness of a
condition imposed by the planning board of Holyoke (board)
pursuant to site plan review of Castle Hill Apartments Limited
Partnership's (Castle Hill) proposal to construct five multifam-

---

[1]Pilot Construction, Inc.

ily dwellings. The use being one permitted as of right in the relevant zoning district, the board was limited to imposing reasonable conditions on the use. Finding that the design was not in harmony with the existing townhouses on the site or the adjacent residential neighborhood, the board approved the plan, but conditioned approval on the submission of a new plan showing two entrances per unit instead of the two entrances per building depicted on the plan. On appeal to the Land Court, the judge held that the board had exceeded its authority under the site plan review criteria contained in the Holyoke zoning ordinance (ordinance). We affirm.

*Background.* An understanding of the proposed plan, the ordinance, and the elements of site plan review contained in the ordinance are essential to a discussion of the legal issues presented.[2] Castle Hill seeks to construct five multifamily dwellings on a 17.4 acre site (locus) in the RM-20 zoning district in the city of Holyoke. The plan contemplates four three-story buildings and one two-story building[3] containing a total of 123 garden style (horizontally oriented) residential rental units. The use is one permitted as of right in the RM-20 zoning district, which allows multifamily dwellings with a density of up to twenty units per acre. Already existing on the locus, which is owned by Castle Hill, are fifty-six two-story townhouse units, constructed in a vertical style in the 1960's or 1970's, each with two entrances per individual unit. With the addition of the proposed units, the total density on the locus would be 179 units, compared to the 348 units that could be constructed at the site as of right.

As proposed, the units would not have direct individual access and egress from the outside, but rather would have access and egress through common areas of the building. The board described the buildings, which have two entrances per building,

---

[2] "Because site plan review is created by local ordinance or bylaw and not State statute, we recognize that the term does not have one meaning nor is the review process uniform from municipality to municipality." *St. Botolph Citizens Comm., Inc.* v. *Boston Redev. Authy.*, 429 Mass. 1, 8 n.9 (1999).

[3] The original plan contained five three-story buildings, but during the public hearing process, Castle Hill removed the third floor from the building closest to the abutting residential area. This resulted in a reduction in the number of units from 125 to 123.

as "barrack" style. The locus abuts properties located in the R-1 single residence district.

Notwithstanding that multifamily dwellings are a use permitted as of right, § 7.4.6 of the ordinance requires both a special permit and site plan approval for multifamily development consisting of more than one building for dwelling purposes per lot.[4] Pursuant to § 10.1.1 of the ordinance, the purpose of site plan review is "to protect the health, safety, convenience and general welfare of the city by providing a mechanism to review plans for proposed structures and to ensure that development is designed or expanded in a manner that reasonably protects visual and environmental qualities of the site and its immediate surroundings."

With regard to building design, the general site plan review provisions contained in § 10.1.7(3) of the ordinance provide: "The architectural style shall be in harmony with the prevailing character and scale of buildings in the neighborhood through the use of appropriate building materials, screening, breaks in the roof or wall lines and other architectural techniques. Variation in detail, form and siting shall be used to provide visual interest and avoid monotony. Proposed buildings shall relate harmoniously to each other with adequate light, air, circulation, and separation between buildings."[5]

The board found that as designed, the site plan complies with the use, density, and dimensional provisions of the ordinance, the General Laws, and all applicable rules and regulations of State and Federal agencies. The board further found, however,

---

[4]Pursuant to the parties' stipulation at the summary judgment hearing, issues surrounding the special permit, apparently including whether the city may properly require a special permit for uses permitted as of right, see *SCIT, Inc.* v. *Planning Bd. of Braintree*, 19 Mass. App. Ct. 101, 110 (1984), are not before us.

[5]Section 7.4.8 of the ordinance provides additional site plan review criteria in association with the board's consideration of applications for special permits for multifamily dwellings. However, the special permit concerning the locus is not before us. See note 4, *supra*. The board's decision made reference only to the site plan review criteria in § 10.1.7 of the ordinance and the board has made no direct argument that § 7.4.8 applies to the instant appeal. The Land Court judge's decision considered only "§ 10.1.7 Site Plan Review," and in the absence of argument to the contrary or clear error of law, we likewise confine our consideration to the requirements of § 10.1.7.

that "the development's building design is not compatible with the existing development with regard to architecture, building materials and entranceways. The proposed units are of 'barrack' style design (two entranceways per building) using vinyl siding and facade brick, yet the existing buildings use clapboard and brick with separate front and rear entranceways for each unit." Further, the board determined that the " 'barrack[]' style building design is not compatible, consistent or harmonious with the prevailing character, scale or overall architectural design of the buildings in the neighborhood." The board thus concluded that the plan does not comply with § 10.1.7(3) of the ordinance or the general purpose of site plan review set forth in § 10.1.1 of the ordinance as it "does not properly protect the health, safety, convenience and general welfare of the City and is not designed in a manner that reasonably protects the visual and environmental qualities of the site and its immediate surroundings . . . ."

Consequently, in approving the site plan, the board imposed condition number eight, requiring Castle Hill to "submit to the Board for [its] approval, an amended design that shall address the following:

> "(a) The building design shall be in harmony with the existing structures.
>
> "(b) The design shall incorporate the use of brick and clapboard construction materials consistent with the existing structures.
>
> "(c) The proposed structures shall vary in size, style and detail consistent with the existing structures on the parcel.
>
> "(d) Each unit must include a front and rear means of access/egress specific to the existing dwelling units on the parcel.
>
> "(e) The color of each unit shall be constant [*sic*] with the color scheme of the existing development."

Castle Hill appealed to the Land Court.[6] Its complaint, later

_____
[6]Section 10.1.10(1) of the ordinance provides: "Persons aggrieved by the

844         65 Mass. App. Ct. 840 (2006)

Castle Hill Apartments Limited Partnership *v.* Planning Board of Holyoke.

verified by the affidavit of Robert Richard, president of plaintiff Pilot Construction, Inc., the developer of the locus, asserts that the plan "does in fact 'incorporate the use of brick and clapboard construction materials consistent with the existing structures[,]' . . . does in fact 'vary in size, style and detail consistent with the existing structures[,]' . . . [and] . . . 'the color . . . is . . . constant with [the] color scheme of the existing development.' " Although it is not clear from the record, the parties apparently reached an accord on these points because only the requirement of condition 8(d) — two entranceways per individual unit — was at issue by the time the parties reached the summary judgment stage of the litigation.

Castle Hill sought summary judgment on the ground that condition eight was in excess of the board's authority and effectively denied a use permitted as of right. Richard's affidavit averred that the condition requiring two means of access and egress per unit would require "a redesign of the Project from garden style units to townhouse style units, reducing the number of units in the Project from 123 garden-style to 40 to 60 townhouse-style units within the footprint of the Project as 'approved' by the Planning Board." The Land Court judge agreed with Castle Hill, reasoning that issues of access and egress are not aesthetic considerations and that the site plan review criteria do not reference building access. Further noting the dramatic reduction in the number of units effectuated under the auspices of aesthetic considerations, the judge concluded that the board had exceeded its authority. The judge deleted condition 8(d) and remanded the matter to the board for findings and a new decision consistent with the summary judgment decision.

Upon remand, the board "reluctantly" approved the site plan notwithstanding its continued belief that "the proposed plan, which continues to use a 'barrack[]' style design, is [neither] compatible nor harmonious with either the existing development or the surrounding neighborhood."[7] The board now appeals to this court.

---

action of the Planning Board pursuant to [site plan review] shall appeal in accordance with the provisions of G. L. c. 40A, § 17."

[7]The board additionally imposed conditions that would have allowed the board to conduct a site visit after completion of construction and landscaping

*Discussion.* 1. *Site plan review.*[8] "The Zoning Act, G. L. c. 40A, does not specifically recognize site plans as an independent method of regulation. . . . However, the use of site plan approval as a permissible regulatory tool for controlling the aesthetics and environmental impacts of land use has been recognized since *Y.D. Dugout, Inc.* v. *Board of Appeals of Canton,* 357 Mass. 25, 31 (1970)." *Dufault* v. *Millennium Power Partners, L.P.,* 49 Mass. App. Ct. 137, 138-139 (2000). "[W]here the proposed use is one permitted by right the planning board may only apply substantive criteria consistent with *Prudential Ins. Co.* v. *Board of Appeals of Westwood,* 23 Mass. App. Ct. 278 (1986) (i.e., it may impose reasonable terms and conditions on the proposed use, but it does not have discretionary power to deny the use)." *Quincy* v. *Planning Bd. of Tewksbury,* 39 Mass. App. Ct. 17, 21 (1995). Where the site plan involves a permitted use, "the judge's proper role . . . [is] to

to "determine if the plantings provide an adequate buffer to screen the abutting single-family zoning district to the south," and it held open the option of requiring "additional plantings and/or suitable screening material to enhance the buffer." These conditions resulted in additional proceedings before the Land Court, which struck the board's attempt to retain "unfettered discretion to determine after the fact whether the details of the Landscape Plan are satisfactory" and require additional landscaping. The court amended condition 5 and struck conditions 8, 9, and 10 of the board's decision after remand and adopted a compromise proposal submitted by Castle Hill. The board does not contest this decision on appeal.

[8]The judge determined that jurisdiction over this dispute was proper, and neither party appeals from that portion of the decision. We agree that the procedural posture of this case is closer to that in *Quincy* v. *Planning Bd. of Tewksbury,* 39 Mass. App. Ct. 17, 19-22 (1995), than it is to those cases where a building permit application and exhaustion of the pertinent administrative remedies were prerequisites to an appeal of a planning board's approval or denial of a site plan because the site plan review process was attached to the building permit process. See *St. Botolph Citizens Comm., Inc.* v. *Boston Redev. Authy.,* 429 Mass. at 9; *Dufault* v. *Millennium Power Partners, L.P.,* 49 Mass. App. Ct. 137, 142 (2000); *Cumberland Farms, Inc.* v. *Planning Bd. of Bourne,* 56 Mass. App. Ct. 605, 608-610 (2002). Here, §§ 10.1.9 and 10.1.10 of the ordinance provide that site plan review shall be conducted in accordance with the procedures set forth in G. L. c. 40A for special permits and that persons aggrieved by the board's decisions shall appeal in accordance with the provisions of G. L. c. 40A, § 17. See *Osberg* v. *Planning Bd. of Sturbridge,* 44 Mass. App. Ct. 56, 60 n.8 (1997). The judge's finding that the board was acting in its capacity as a special permit granting authority, therefore, was supported by the record, and we agree that the Land Court properly exercised jurisdiction.

inquire whether the public interest [may] be protected to a degree consistent with the reasonable use of the locus" for multifamily dwellings. *Id.* at 22. See *Prudential Ins. Co.* v. *Board of Appeals of Westwood*, 23 Mass. App. Ct. at 283 (the judge is "not obliged to give deference to the board's decision" and is "essentially to examine the proposal to see if the . . . problem was so intractable that it could admit of no reasonable solution").

Site plan review, however, is not without some teeth. "A board . . . possesses discretion to impose reasonable conditions under a by-law's requirements in connection with approval of a site plan, even if the conditions are objected to by the owner or are the cause of added expense to the owner." *Id.* at 283 n.9. Thus, conditions requiring shielded lighting for parking lots, fencing of the lot, methods to reduce headlight glare on residences, and the addition of drainage and sanitary disposal plans to the site plan have been considered "reasonable terms and conditions upon the commercial use of land zoned for business." *Y.D. Dugout, Inc.* v. *Board of Appeals of Canton*, 357 Mass. at 31 & n.7. "In some cases, the site plan, although proper in form, may be so intrusive on the interests of the public in one regulated aspect or another that rejection by the board would be tenable. This would typically be a case in which, despite best efforts, no form of reasonable conditions could be devised to satisfy the problem with the plan and the judge conducting de novo review concurs in that conclusion." *Prudential Ins. Co.* v. *Board of Appeals of Westwood*, 23 Mass. App. Ct. at 283 n.9. With these standards in mind, we turn to the condition at issue.

2. *Reasonable conditions.* The parties agree that the site plan at issue involved a use permitted as of right and that the board was limited to imposing reasonable conditions on the proposed use. The issue, then, is whether imposing a condition of two entrances per individual unit is, within the meaning of § 10.1.1 of the ordinance, a "reasonable" condition to "protect the health, safety, convenience and general welfare of the city . . . and to ensure that [the] design[] . . . reasonably protects visual and environmental qualities of the site and its immediate surroundings." The board does not contest that as a result of condition

8(d), Castle Hill would have to completely reconfigure both the interior and exterior of each of the proposed buildings and lose more than one-half of the proposed units to which it would otherwise be entitled as of right.[9] The board insists, however, that requiring a reconfiguration of the project to what it contends would be a "more appropriate building design" that is "sensitive to the architectural structures" on the site and in the abutting neighborhood and that "addresse[s] the safety concerns the board had about access" was reasonable and appropriate under the site plan review criteria.

We note at the outset that the board articulates no "health, safety, [or] convenience" concerns in its decision. While the board's brief suggests that condition 8(d) was imposed in part because of "safety concerns," nothing in the board's decision reflects any such concern. Any evidence of safety issues arising from the use of two entrances for each building is conspicuously absent in the summary judgment record. We are left, then, with the plan's impacts on the "visual and environmental qualities of the site and its immediate surroundings."

Without question the impact of condition 8(d) goes far beyond conditions modifying lighting, adding fencing, and requiring drainage plans previously upheld as reasonable in *Y.D. Dugout, Inc.* v. *Board of Appeals of Canton*, 357 Mass. at 31 & n.7. The condition's dramatic effect on the density of the project under the guise of harmonizing visual impacts is troubling. Issues of density are not included in the site plan review criteria perhaps because issues as to density, like issues related to the use itself, were previously resolved "in a legislative sense" when the city enacted the ordinance permitting up to twenty units of multifamily residences per acre as of right in the RM-20 zoning district. Compare *KCI Mgmt., Inc.* v. *Board of Appeal of Boston*, 54 Mass. App. Ct. 254, 261 (2002).

Although the record contains evidence suggesting that city authorities were concerned about the density of the project and its impact on city services and put pressure on the board to deny site plan approval for those reasons, we need not impute

---

[9]The board's suggestion in its brief that Castle Hill could have submitted a "new" plan with the same number of units in a different footprint which "might have addressed" the board's concerns lacks any evidentiary basis.

to the board a motive beyond that expressed in its decision. Even accepting that the board was motivated by the "visual harmony" rationale expressed in its written decision, we cannot escape the conclusion that the board exceeded its authority.

While we recognize that harmony with the surrounding neighborhood is an articulated goal of the site plan review criteria, § 10.1.7(3) of the ordinance provides that such harmony is to be achieved "through the use of appropriate building materials, screening, breaks in the roof or wall lines and other architectural techniques." The parties apparently reached accord as to these enumerated considerations because the issues of clapboard versus vinyl siding and color scheme were resolved before the case reached the summary judgment stage. Moreover, the sketches contained in the record depict structures with multiple and varied roof lines and attractive landscaping. On appeal the board identifies no remaining exterior design flaw that could be rectified by any of the enumerated methods of addressing visual harmony.

As noted by the judge, the number of entrances is not an enumerated concern of site plan review. We reject the board's assertion that the number of entrances is an inherent part of a building's architecture or design in the context of site plan review as defined by the ordinance. We do not view the catchall phrase of "other architectural techniques" as permitting the board to require a redesign of each building to provide multiple entrances unrelated to any consideration of the safety, health, environmental or aesthetic benefits to the neighbors. Such a condition goes far beyond the measures outlined in the ordinance to achieve visual harmony.

In the summary judgment record, the board failed to produce any evidence that the health, safety, convenience, or general welfare of the city, the future residents of the locus, or the surrounding neighbors would be improved by multiple entrances per unit rather than two entrances per building. Further, the proposition that two entryways per unit would contribute positively to the visual impacts of the buildings is dubious at best. Although the board's adoption of the label " 'barrack' style" to describe the proposed buildings connotes an unattractive, uninteresting, and, perhaps, distasteful design, the actual

site plan depicts colonial-like structures with varied roof lines, shuttered windows, multiple decks, and attractive lighting and landscaping. The visual advantages achieved from adding multiple entrances to the proposed structures are not readily apparent from the record.

Reasonable conditions aimed at controlling noise or other environmental or visual impacts associated with the use of the entrances by multiple users, or the architectural design of the entrances themselves, may have been permissible under Holyoke's site plan review criteria. Nevertheless, imposing a condition that requires Castle Hill to completely redesign the interior and exterior of each building to add multiple entrances to accommodate vague exterior aesthetic concerns is not reasonable and exceeds the board's authority.

In addition, we share the judge's concern about the impact of the condition on the density of the project, which is not even an enumerated consideration of the site plan review criteria. We do not consider reasonable a condition imposed pursuant to site plan review that provides questionable aesthetic value and yet profoundly impacts the density of the project. To the extent such an impact could be tolerated, the design flaw at issue would have to be "so intrusive on the interests of the public" in a regulated aspect that the condition could be considered reasonable. Compare *Prudential Ins. Co.* v. *Board of Appeals of Westwood*, 23 Mass. App. Ct. at 283 & n.9. The board has failed to articulate such a concern here.

*Judgment affirmed.*