WILLIAM A. BARLOW & another,[1] trustees,[2] *vs.* PLANNING
BOARD OF WAYLAND
(and a companion case[3]).

No. 04-P-663.

Suffolk. February 25, 2005. - August 22, 2005.

Present: DUFFLY, KAPLAN, & DREBEN, JJ.

*Zoning,* Special permit, Site plan approval, Judicial review. *Planning Board.*

In the circumstances of an appeal brought in the Land Court challenging a local planning board's refusal to approve the plaintiffs' proposed site plan for a lot in a conservation cluster development, this court concluded that the judge properly considered the planning board's action under the standard of review applicable to a special permit [318-321], and that the board's refusal was not arbitrary, capricious, or based on legally untenable grounds [321-323].

CIVIL ACTIONS commenced in the Land Court Department on December 21, 1999, and February 23, 2001, respectively.

After consolidation, the cases were heard by *Leon J. Lombardi,* J.

*F. Alex Parra (Louis N. Levine* with him) for the plaintiffs.

*Mark J. Lanza,* Town Counsel, for the defendants.

DREBEN, J. This appeal by the trustees is from a decision of the Land Court upholding the refusal of the planning board of Wayland to approve their proposed site plan for lot 20 in a conservation cluster development (CCD).[4] The trustees chal-

---

[1]Stephen M. McInnis.

[2]Under declaration of trust dated December 31, 1984, recorded with the Middlesex South District registry of deeds in book 15949, page 419.

[3]William A. Barlow & another, trustees, *vs.* Board of Appeals of Wayland.

[4]In the Land Court there were two appeals under G. L. c. 40A, § 17. One was from a zoning board of appeals decision upholding a denial by the build-

lenge the judge's consideration of the planning board's action under the standard of review applicable to a special permit and argue that even if that standard applies, the planning board's refusal was arbitrary, capricious, or based on legally untenable grounds. We affirm.

1. *Background.* On September 14, 1992, the planning board granted the trustees a special permit under Article 18 (formerly numbered Article IX) of the town's zoning by-law authorizing a CCD of seven single-family residences.[5] The present controversy involves the only remaining unbuilt lot, lot 20, which contains approximately seven and three-quarter acres, much of which is wetlands.

In order to obtain a special permit for a CCD, under the Wayland zoning by-law, the applicant must file an extensive site plan covering all the lots. This site plan, which we will refer to as the CCD site plan, or special permit site plan, differs from the site plan at issue, which involves only lot 20. The CCD site plan consisted of five sheets, and showed, among other things, wetlands, buffer zones, driveways, and locations of houses and septic systems. The following note, referring to proposed locations of houses and septic systems, appeared on the sheets of the CCD site plan, including sheet four, the sheet depicting lot 20:

> "Proposed house locations shown for informational purposes only. Exact locations and dimensions to be determined by future owners.
>
> "Septic systems will be constructed in the area of perc. tests."

In its decision granting the special permit, the planning board made findings and imposed conditions. Some were applicable to all lots, including (1) the requirement of submission of site development and house plans to the planning board prior to

---

ing commissioner of a building permit for lot 20, in part because of the absence of an approved site plan. The other appeal was from the denial by the planning board of a special permit to approve the site plan.

[5]See G. L. c. 40A, § 9.

undertaking any work,[6,7] and (2) the requirement that "[t]he development . . . be constructed in accordance with this decision, the approved Application and Plan, and all other applicable laws, by-laws, and regulations." Other conditions in the special permit affected only lot 20, e.g., a provision that "subsurface sewage disposal," that is, the septic system, would be permitted in a specified location in the perimeter buffer zone "only if no other location on Lot 20 proves to be suitable for such disposal."

On January 15, 1999, the Massachusetts Department of Environmental Protection (DEP) issued a superseding order of conditions revising the delineation of the wetlands on lot 20.[8] As a result, the wetlands boundary moved in a westerly direction and, by bisecting the location of the proposed house, made impossible the construction of the house as shown on the special permit plan. Because of the new location of the wetlands, the trustees submitted a site plan for lot 20 on March 11, 1999, that moved the house, the septic system, and the driveway from the locations shown on sheet four of the CCD site plan. The revised plan was rejected by the planning board on April 7, 1999.[9] The trustees did not seek judicial review of the March plan and the disapproval of that plan is not in issue.

---

[6]The provision stated: "Each lot shall be cleared and disturbed only to the extent necessary for the construction of the house, driveway, septic system, and associated improvements. To assure such minimal clearing and disturbance and other site and construction related requirements, the owner/developer of each lot shall submit site development and house plans to the Planning Board for its approval prior to undertaking any work on the lot. The site development plan shall include a description of how natural resources will be protected during construction. The Planning Board shall review and submit a decision on each such site development and house plan within 21 calendar days of their submission to the Board."

[7]The requirement of a site plan was thus imposed as a condition of the special permit and not by the zoning by-law. Article 601.2.2 of the zoning by-law explicitly exempts CCD proposals from the by-law requirement of a site plan by providing: "SPA [site plan approval] shall not be required for any proposal subject to Article 18, Conservation Cluster Development District." Article 1804.1, however, authorizes the planning board to "impose as a condition of the special permit further restrictions, conditions and safeguards."

[8]The record does not indicate what triggered the superseding order.

[9]The planning board denied approval of the March plan "because the proposed locations of the driveway and public sidewalk are not equivalent to their locations on the approved special permit plans . . . ."

The trustees submitted another plan on April 14, 1999. In May, 1999, the planning board again denied approval.[10] Thereafter, the trustees applied to the Wayland building commissioner for a building permit, which was rejected for several reasons, including the lack of site plan approval and the failure to provide building plans. The denial was appealed to the zoning board of appeals (zoning board). That board affirmed the denial by the building commissioner on numerous grounds, among them, the failure to provide plans and the determination that because of the changed locations of the driveway and the septic system, an amendment to the 1992 special permit was required and could only be granted after a public hearing. The trustees appealed to the Land Court from that decision. See note 4, *supra*.

Without prejudice to their contention that an amendment or modification of the special permit was unnecessary, the trustees applied to the planning board to approve the April, 1999, site plan as an amendment to the 1992 special permit. When, after public hearing, the amendment was denied on February 6, 2001,[11] they filed the second appeal to the Land Court. The cases were heard together in that court.

2. *Findings of the judge and standard of review.* The Land Court judge found that the April, 1999, site plan differed markedly from the 1992 special permit plan. The footprint of the proposed house was approximately 3,200 square feet as compared with 2,000 square feet on the 1992 plan, a sixty percent increase.[12] Both the house and septic systems were in locations other than those shown on the special permit plan.

---

[10]The April plan was disapproved "because the proposed location of the septic system is within the buffer and not consistent with the Special Permit approval issued 9/4/92. Also the proposed driveway falls within the 50' buffer zone of the site." The disapproval letter also mentions concerns of the fire and highway departments.

[11]We will discuss the planning board's reasons in part 3 of this opinion.

[12]The judge also found that the April, 1999, plan was for a four-bedroom house while the special permit indicated a two-bedroom house. There is no record support for that finding, as the footprint on the special permit plan did not indicate whether the plan was for a one-story or a two-story building. Moreover, the engineer who drew the septic system, approved by the board of health in 1996 before the change in the wetlands determination, testified that the board of health approval was for a four-bedroom house. He also testified

Larger portions of the septic system and the driveway fell within the perimeter buffer, a fifty-foot strip required by the planning board regulations.[13] Both intrusions, the judge found, would have "a greater impact on the perimeter buffer than the improvements shown on the special permit plan."

Noting that the planning board was not determining whether the trustees' site plan should be approved under the zoning by-law, see note 7, *supra*, but rather was reviewing the site plan in fulfilment of a condition imposed by the special permit, the judge considered that the planning board was "[i]n fact . . . entertaining an application to modify a special permit." The trustees take issue with that ruling, arguing that the conditions of the special permit were satisfied and, citing *Prudential Ins. Co. of America* v. *Board of Appeals of Westwood*, 23 Mass. App. Ct. 278, 281-282 (1986), quoting from *SCIT, Inc.* v. *Planning Bd. of Braintree*, 19 Mass. App. Ct. 101, 105 n.12, 106 (1984), that the planning "board did not have discretionary power to deny . . . [approval], but instead was limited to imposing reasonable terms and conditions on the proposed use."

Because of the extensive changes from the special permit plan, the judge correctly reviewed the April plan under the standard of review applicable to special permits. See *Chambers* v. *Building Inspector of Peabody*, 40 Mass. App. Ct. 762 (1996). In that case, Elder Living, Inc., obtained a special permit from the city council, the city's permit granting authority, to construct an assisted living facility. As here, Elder Living, Inc., was required to include with its application for a special permit a site plan of the locus showing the proposed improvements. The special permit contained a number of conditions including one (condition 5) that provided that the building shall be of a "Victorian Mansion style as represented by the petitioner at the

---

that he designed the septic system for three other houses in the CCD, and that they were for four-bedroom homes.

[13]The trustees challenge the validity of this regulation. The challenge, however, is without merit. It appears that the issue was not argued below, and hence may not be raised for the first time on appeal. Moreover, contrary to the trustees' contention, the CCD provisions give the planning board wide scope. The planning board not only has authority to issue regulations but also may impose restrictions, conditions and safeguards to protect the general welfare. See Article 1804.1. The fifty-foot buffer is not in conflict with the by-law, which sets forth only a *minimum* set back requirement.

public hearing. The Community Development Department shall review the final design and building plans which shall include exterior building materials and proposed landscaping. . . ." *Id.* at 764.

The community development department approved a plan that enlarged by eleven percent the proposed building's footprint, moved the foundation walls, added air conditioner cooling towers and trash dumpsters, and modified and enlarged slightly the parking lot. A gazebo (not built) was also added to the plan. After a foundation permit was issued and again after a building permit issued, the plaintiff abutter objected, but the building inspector, the board of appeals, and the Superior Court upheld the permits.

This court reversed, holding that the owner was required to apply for a new special permit for the facility in its presently constructed form.[14] We construed condition 5 as contemplating only relatively minor deviations from the original site plan, not substantial changes. "The significant increase in the building's size or footprint and the change (however slight) in the building's actual location upon the locus were changes of substance." *Id.* at 766.[15] We also reiterated the rule that a permit granting authority "may not delegate to another board, *or reserve to itself for future decision*, the determination of an issue of substance" (emphasis supplied). *Tebo* v. *Board of Appeals of Shrewsbury*, 22 Mass. App. Ct. 618, 624 (1986), *S.C.*, 400 Mass. 464 (1987). See *Weld* v. *Board of Appeals of Gloucester*, 345 Mass. 376, 378-379 (1963). The planning "board may not make a substantive amendment [to a special permit] which changes the result of an original deliberative decision, or which grants relief different from that originally granted, without compliance with the relevant notice and hearing requirements." *Tenneco Oil Co.* v. *City Council of Springfield*, 406 Mass. 658, 659-660 (1990), quoting from *Huntington* v. *Zoning Bd. of Appeals of Hadley*, 12 Mass. App. Ct. 710, 714

---

[14]Apparently, the facility was completed prior to the plaintiff's appeal to this court.

[15]The decision also held that the changes fell within the prohibition of another condition of the special permit providing that "there shall be no structural additions to said premises." *Chambers* v. *Building Inspector of Peabody*, 40 Mass. App. Ct. at 766.

n.4 (1981). "The clear purpose of the hearing and notice requirements . . . is to ensure that zoning authorities act on special permit applications only after the opposing interests have had a fair opportunity to be heard." *Id.* at 660.

In *Chambers*, we did not have occasion to discuss the standard of review applicable to a decision of a permit granting authority on a request for an amendment or modification of a special permit indicating substantial changes to the plan originally approved as part of the special permit. In reaching our decision that substantial modifications require submission of a revised site plan to the permit granting authority and a public hearing, we pointed out that the location, mass, ground coverage and distance from lot lines of Elder Living, Inc.'s assisted living facility "are of particular and prime importance to neighboring property owners. . . . The zoning ordinance . . . requires that a site plan submitted in conjunction with an application for a special permit depict the size and location of proposed structures. We think it reasonable to assume, therefore, that, when a board is asked to exercise its discretion to grant a special permit, the site plan submitted by the owner or developer should accurately reflect the proposed facility in this and other key regards." *Chambers* v. *Building Inspector of Peabody*, 40 Mass. App. Ct. at 766-767.

Implicit in the discussion in *Chambers* is that on submission of the revised plan, the permit granting authority must again exercise its discretion in weighing the factors relevant to a decision. Indeed, as previously indicated, the remedy ordered in that case was to give the owner "a reasonable opportunity to apply to the city council for a *new* special permit for the facility . . ." (emphasis supplied). *Id.* at 769. Whether we term the application as a modification of a special permit or a new one, the matter involves the discretion of the planning board. The trustees are not entitled to approval as a matter of right. Accordingly, we reject the trustees' suggestion based on *Quincy* v. *Planning Bd. of Tewksbury*, 39 Mass. App. Ct. 17, 21-22 (1995),[16] that the planning board's review of the proposed modification implicates

---

[16]In *Quincy* v. *Planning Bd. of Tewksbury*, 39 Mass. App. Ct. at 20-21, the applicant had to follow procedural requirements of a special permit as provided by the by-law, but those portions of the by-law that required the application of

only the hearing requirements and not the discretionary review standards applicable to special permits.

3. *Review of planning board's action.* The standard of review for a special permit, as correctly described by the Land Court judge, requires the judge to make independent findings on the evidence presented to the judge, and to determine, based on that evidence, the legal validity of the decision of the permit granting authority. However, "it is the 'board's evaluation of the seriousness of the problem, not the judge's, which is controlling.'" *Subaru of New England, Inc.* v. *Board of Appeals of Canton*, 8 Mass. App. Ct. 483, 488 (1979), quoting from *Copley* v. *Board of Appeals of Canton*, 1 Mass. App. Ct. 821 (1973). See *Britton* v. *Zoning Bd. of Appeals of Gloucester*, 59 Mass. App. Ct. 68, 76 (2003). As set forth in *Davis* v. *Zoning Bd. of Chatham*, 52 Mass. App. Ct. 349, 355 (2001):

> "Even if the record reveals that a desired special permit could lawfully be granted by the board because the applicant's evidence satisfied the statutory and regulatory criteria, the board retains discretionary authority to deny the permit . . . , so long as that denial is not based upon a legally untenable or arbitrary and capricious ground" (citations omitted).

Although we apply the standard of review applicable to a special permit in determining whether, in this case, the decision denying approval of the site plan was arbitrary, a number of considerations must be taken into account: approval for a house had been given for lot 20; revisions to the original special permit plan were necessary as a result of the superseding order of DEP; encroachments on the perimeter buffer zone were originally envisioned for the septic system if needed, albeit in a different location, and also for the driveway[17]; and the septic system originally approved by the board of health was for a

---

discretionary special permit standards by the planning board were void as the proposed use was one permitted as of right.

[17]The judge found that on the original special permit plan the driveway was 440 feet long with approximately 370 feet situated within the perimeter buffer. The driveway on the April, 1999, plan was 530 feet long and resulted in an additional sixteen feet within the buffer.

four-bedroom house and at least three other houses within the CCD had septic systems designed for four-bedroom houses.

The reasons given in 2001 by the planning board in denying modification of the special permit were:

> "1) The septic system was moved from the site originally approved in the decision and located within the buffer area;
>
> "2) The revised design and location of the septic system does not satisfy [the provision of the zoning by-law] that the development is designed to take into consideration the natural terrain of the tract;
>
> "3) The relocated driveway is located within the 100' buffer zone[18];
>
> "4) [This reason involved an access dispute which has been resolved.]
>
> "5) The proposed retaining wall was not contemplated in the original approved decision."[19]

The evidence indicated that if the garage were moved and if the footprint of the house were smaller, the encroachments into the buffer zone by the septic system and the driveway would be reduced. On this basis, despite the cited considerations favoring approval, we cannot say the denial of an amendment to the 1992 special permit to allow the April, 1999, site plan was arbitrary, capricious, or based on legally untenable grounds. The judge appears to have upheld the planning board on the basis that a two-bedroom house with a septic system designed for such a house would be feasible. At oral argument, the trustees indicated a willingness to construct a two-story house with the original 2,000-foot footprint.

We need not decide whether the rejection of any plan for a four-bedroom house would likely be arbitrary. We point out,

---

[18]This is the Wayland Conservation Commission buffer.

[19]There was uncontroverted evidence that the sidewalk in the original special permit plan was in the same location as shown on the April, 1999, plan, and that the original plan had no details for the sidewalk. Thus it appears the original plan would have required a retaining wall.

however, that the considerations taken into account in this case by us as a reviewing court must also inform any future decision of the planning board on a new application for a special permit.[20]

In conclusion, we affirm the Land Court's decision that the site plan containing substantial changes occasioned by the redefining of the wetlands required an amendment of the special permit by the planning board, and that the decision of the planning board to deny the application to amend the 1992 special permit was not arbitrary, capricious, or based on legally untenable grounds. Because the building plans were not given to the building commissioner, we also affirm the Land Court's affirmance of the zoning board's decision, in turn affirming the denial of a building permit.[21]

*Judgments affirmed.*

[20]In view of these considerations, the planning board will no doubt be hesitant in rejecting all plans for a four-bedroom house having the size of the original footprint.

[21]In the view we take of this case, the planning board's decision was directly appealable under G. L. c. 40A, § 17, and not via the zoning board.