Nickerson, Gary A., J.
This action is an appeal from the decision of the Falmouth Zoning Board of Appeals granting to Gail Ellis Gale permission to build a single-family home on land bordering on Jenkins Pond. The case was tried January 10 and 11, 2007.[1] Based on all the credible evidence the court enters the following findings of fact.
FINDINGS OF FACT
Jenkins Pond is one of several lovely fresh water ponds strewn across the Falmouth landscape by the retreating glacier at the end of the last Ice Age. During the last fifty years, the neighborhood known as Pinecr-est Beach has grown up around the west end of Jenkins Pond. Our plaintiffs, Gerald and Roberta Jenkins, own the land and single-family residence at 322 Pinecrest Beach Drive. Their lot, referred to in the exhibits to this case as Parcel D, lies between the eastern side of Pinecrest Beach Drive and the western shore of Jenkins Pond. To the north of Parcel D lies Parcel E, vacant land owned by our defendant Gail Ellis Gale.
Parcel E is bisected by Pinecrest Beach Drive, The east portion of Parcel E runs from the eastern side of Pinecrest Beach Drive to the western shore of Jenkins Pond and has an area of 7,670 square feet, more or less square in shape. The west portion of Parcel E is triangular in shape with its base along the western side of Pinecrest Beach Drive and its southwestern side along the edge of Deer Pond Road. The west portion of Parcel E totals about 7,560 square feet in area.[2]
Gale took title to Parcel E from her grandfather in 1962. The deed description of her property is premised on the configuration of Parcel E as shown on a 1962 plan which was endorsed by the Falmouth Planning Board in 1962 so as to facilitate the transfer of Parcels A and B on the plan as so-called “approval not required” lots (lots not requiring all of the strictures of the subdivision control laws) (ex. 15). In 1963 another *404 plan of the lots in the neighborhood was prepared and presented to the Planning Board (ex. 17). The 1963 plan differed from the 1962 plan as to the metes and bounds of both Parcels D and E. The 1963 plan labels the east portion of Parcel E as Lot E and the west portion of Parcel E as Lot F. Both Jenkins and Gale took title to their land premised on the metes and bounds set forth in the 1962 plan.
In 1962 the only access to Parcels D and E from the public road, Sandwich Road, was an old “cartway” known as Deep Woods Road. Deep Woods Road ran from Sandwich Road past both parcels to more remote land. The 1963 plan (ex. 17) depicted a layout for Pinecrest Beach Drive as a private road following the path of Deep Woods Road. Apparently the intent of the 1963 plan was to secure Planning Board approval under the subdivision control laws to permit the residential development of the neighborhood. The 1962 plan bears the following endorsement: “Parcels ”C," “D,” and “E” are not approved and may not be conveyed as such, or built upon." Immediately below this endorsement there is a line for the signature of the Planning Board’s secretary to certify the vote as to this restrictive endorsement but the signature line is blank. The 1963 plan states that Planning Board approval is subject to the terms and conditions of a certain performance bond. Further evidence is lacking as to the status of access to Parcel E in 1962. Nonetheless the court infers that the 1963 plan was prepared and approved to facilitate the development of Parcels D and E, and most probably the more remote land to the north and west.
On the record at hand, the court cannot determine whether Deep Woods Road provided adequate access to Parcel E in 1962. While the 1963 plan provides for adequate access, there is no evidence as to when Deep Woods Road/Pinecrest Beach Drive was improved in accordance with the plan. Presumably there was adequate access sometime prior to 1984 for in 1984 when the Jenkins bought Parcel D there was a home on the premises. In any event, the east portion of Parcel E had at least 90 feet of frontage on Deep Woods Road in 1962.
In 1962 Parcel E was located in the Agricultural District which required a minimum lot size of 10,000 square feet, a minimum lot width of 75 feet but no frontage requirement. Zoning amendments in 1972 moved the east portion of the parcel to the Residential C zone with a lot area of 15,000 square feet, a lot width of 100 feet and frontage of 50 feet. In 1980 the west portion of the parcel was re-zoned alike. In July 1995 the lot requirements for Residential C were changed to 40,000 square feet in area, 100 feet in width and frontage of 100 feet subject to a special grandfathering provision in the bylaws (ex. 36, §240-67).
In 1995 the town decided to improve Pinecrest Beach Drive and secure it as a public way. Apparently the selectmen realized that Pinecrest Beach Drive bisected Parcel E, whereas the other lots in the area merely fronted on the private road, so the selectmen took action on two fronts as to Parcel E. First, they negotiated with Gale for an easement across Parcel E. Gale granted the easement, set forth in Exhibit 11, in return for a written agreement whereby the selectmen recognized Parcel E as a single lot deemed to be “a buildable lot for zoning purposes” (ex. 15). The selectmen further agreed to grant Gale a license for underground utilities under Pinecrest Beach Drive and to not assess betterments against Parcel E. On a second front, the selectmen recorded an order of taking against Parcel E for “an easement for all purposes for which roads and ways are commonly used . . .” (ex. 10). The net effect was that, as of July 1995, Parcel E was subject to a road layout some 35+ feet wide (ex. 19).[3]
From 1962 to the present Gale has owned Parcel E and none of the lots abutting thereto. In 1987 she received a building permit from the town to construct a house on the land (ex. 8). A frost wall foundation was poured on the east portion of the land, but nothing more came of the project. In 1992 and 1993, Mr. Jenkins wrote to Gale in an effort to get her to share in the expense of installing town water along the roadway (exs. 32, 33). By his letters, Mr. Jenkins appears to concede that Gale owned a buildable lot. In 2003 Gale received a license from the town to install septic lines beneath Pinecrest Beach Drive so as to facilitate her plan to build a house on the east portion of the parcel with the necessary septic system for the house on the west portion (ex. 12).[4]
On October 28, 2003 Gale applied for a special permit under section 240-68D(2) of the zoning bylaws. Section 240-68D(2) precludes the construction of a home within 50 feet of a fresh water pond; hodwever, by special permit, that buffer zone can be reduced to 30 feet. The east wall of the Gale dwelling is intended to be 36 feet from the pond.[5] Gale’s application also sought relief under section 240-3 of the bylaw. Section 240-3 governs preexisting structures and uses. The Board determined that Parcel E is “nonconforming with regard to lot size, but is protected under Section 240-66 C.l.” The Board went on to grant a special permit for construction of the house no closer than 36 feet from the pond. From this decision the plaintiffs appealed pursuant to M.R.C.P. 40A, §17.
APPLICATION OF THE FACTS TO THE LAW
A few words are in order defining what is at stake in this action. When Gale applied to the Board for a special permit for relief from the 50-foot pond setback regulation, the building commissioner was already of the opinion that Parcel E was a buildable lot despite the bylaw’s current lot dimension requirements. Had the building commissioner opined that Parcel E was not grandfathered then Gale could have appealed his decision or sought a variance. Apparently in an abundance of caution, Gale’s application to the Board *405 sought relief under section 240-3 on a theory that the 1987 foundation was a nonconforming structure. The board correctly denied any relief under Section 240-3.
Counsel for Gale and counsel for the Jenkinses appeared before the Board and argued at length as to whether Parcel E was a buildable lot and whether a special permit was appropriate for the proposed 36-foot setback from the pond. The Board considered both issues and rendered a decision as to both, in effect declaring that Parcel E is a buildable lot and granting the special permit as to the pond setback.
Plaintiffs’ complaint in this action seeks a declaration as to whether Parcel E is a buildable lot and a declaration as to the propriety of the granting of the special permit. In most zoning actions declaratoiy relief is denied in favor of relief pursuant to G.L.C.40A, §17, i.e. relief granted after the parties have exhausted all administrative remedies. Martin v. Building Inspector of Freetown, 38 Mass.App.Ct. 509, 510 (1995). A determination as to the propriety of the special permit in this action is clearly a matter of relief in accordance with the zoning statute. Technically the status of Parcel E as a buildable lot is not ripe for review under the zoning statute. Per the statute the Jenkinses would be entitled to appeal the grant of a building permit, once issued, to the Appeals Board and thereby challenge the building commissioner’s opinion that Parcel E is grandfathered. Inasmuch as the parties have fully argued the issue before the Board prior to the issuance of any building permit, and the parties have fully argued the issue to this jurist, this is an instance where declaratory relief in a zoning matter is appropriate and will be entered.
Gale’s first line of defense is that the plaintiffs lack standing. While the welter of cases on the question of standing in zoning appeals does lead to confusing results, the facts at hand establish the plaintiffs’ standing. Sheehan v. Zoning Board of Plymouth, 65 Mass.App.Ct. 52, 54-55 (2005). The Jenkinses are direct abutters. The court accepts Mr. Jenkins’s testimony that if Gale is allowed to proceed with construction the Jenkinses will suffer an economic loss. In short, standing is a non-issue.
To determine whether Parcel E is now a buildable lot one must first determine its status in 1962 when Gale took title. In 1962, Parcel E had a gross area of 18,200 square feet. Section 240-13 (definition of lot area) of the zoning bylaws requires that any area of a lot devoted to a “recorded way open to the public” is to be excluded from the calculation of lot area for zoning purposes. Assuming the cartway was such a road, Deep Woods Road ran 150.5 feet across the lot at an average width of 17 feet (ex. 22, Addendum A). Parcel E’s lot area for zoning purposes in 1962 was 15,641 square feet (18,200 sf - 2558.5 sf.). Per 1962 zoning, a buildable lot in an Agricultural District needed an area of 10,000 square feet and a width of 75 feet. No frontage was required. Under the zoning bylaw, Parcel E was a buildable lot in 1962. Whether a building permit would have issued due to access problems is another question, one that cannot be answered on the record at hand.
From 1962 to the present, various changes in the zoning bylaw have rendered Parcel E non-conforming. Moreover, from 1962 to the present the transformation of Deep Woods Road, an old cartway, to Pinecrest Beach Drive, an up-to-date public road, has changed Parcel E from a single contiguous tract of land that was subject to an easement, into two distinct areas of land, one east of Pinecrest Beach Drive and one to the west. This change is not easily accommodated under the Falmouth Zoning Bylaw. The bylaw defines a lot as “a continuous parcel of land under one ownership delineated by a solid closed line and shown on a plan endorsed by the Planning Board and filed at the Land Court or the Registry of Deeds.” (Ex. 36, §240-13; Addendum C.) This definition, coupled with the definition of lot area, which excludes from the measurement of a lot’s area any portion of the lot occupied by a street, can lead one to believe that a lot in Falmouth can be bisected by a road and still be a single unit for zoning purposes. Such a belief appears to underlie the Board’s decision in this case.
Treating the east and west portions of Parcel E as a single lot for zoning purposes is at best a poor precedent and, at worst, an absurd result. Zoning bylaws must be interpreted to avoid absurd results. North Shore Realty Trust v. Commonwealth, 434 Mass. 109, 112 (2001). The bylaw’s definition of “lot” is questionable. Falmouth has many lots that meet all the requirements of zoning that do not appear, on a plan per the definition of “lot.” Perhaps the bylaw’s definition of “lot” was borrowed from a town’s subdivision control regulations.
A lot is the basic unit of zoning, the area which must meet accepted dimensions to support certain uses. Tracts that are not contiguous, that are separated by streets or by other land, cannot be deemed a single lot. Justice Sosman wrote fluently on the problem, albeit in a different factual context, in the case of North Shore Realty Trust, 434 Mass. at 110-13. The decision at hand is premised on all that is written in North Shore Realty. This jurist concludes that the 1995 road taking created, by operation of law, separate lots for zoning purposes as to the west and east portions of Parcel E.
The east portion of Parcel E is entitled to the liberal grandfathering provisions of the Falmouth Zoning Bylaw. In its decision the Board concluded that Parcel E was grandfathered under section 240-66C(l) of the bylaws. A precise reading of that section shows it is inapplicable to the problem at hand. Section 240-66C(1) (ex. 36, Addendum C) applies to lots in all zoning districts in the town provided the lots meet rigid conditions. In the last clause of the section there is a condition that the lot “had at least ... 50 feet of frontage” (emphasis supplied). Parcel E’s frontage as of 1962 is debatable. The frontage was on a cartway *406 which may or may not have satisfied the concept of frontage. Moreover, the last clause of section 240-66C(1) requires that the lot “conformed to then-existing requirements.” Does “then-existing” refer to 1962 or to January 1, 1981, as referenced in the section? If the latter is the correct date, Parcel E was too narrow to comply with the 1981 bylaw.
Section 240-66C(2) of the bylaw provides more liberal grandfathering rules for lots in certain zoning districts including our Residential C district. The east portion of Parcel E meets the requirements of 240-66C(2) inasmuch as it:
is not held in common ownership with any adjoining land;[6]
now has at least 20 feet of frontage;
is not protected under section 240-66C(l);
has 7500 square feet of area in a Residential C zone; and
will be used for a single-family residence.
This conclusion is bolstered by the provision of section 240-66A of the bylaw which exempts a change in lot size, created through a public taking, from die bylaw’s minimum lot requirements. The obvious intent of section 240-66C(2) is to afford grandfathering rights to lots in the Residential C zone that are far in excess of the rights conferred under the zoning statute and the other provisions of the Falmouth bylaws. There is an overarching principle in zoning law that such regulations not be construed so grudgingly as to create absurd results. Green v. Board of Appeals of Norwood, 358 Mass. 253, 258 (1970). By deeming the east portion of Parcel E to be a buildable lot the court complies with both the letter of the bylaw and its spirit.[7]
Section 240-68 generally deals with setbacks. Section 240-68D addresses setbacks from waterways, establishing specific elevations from which setbacks from the major ponds in town are to be calculated. For Jenkins Pond the benchmark is the 21-foot contour line. Pursuant to section 240-68D no structure can be located as a matter of right closer to Jenkins Pond than 50 feet landward of the 21-foot contour line. If a lot has less than 125 feet depth from the 21-foot contour line the lot is eligible for a special permit reducing the buffer zone from 50 to 30 feet. From the 21-foot contour line to the eastern edge of the layout of Pinecrest Beach Drive measures 102 feet.
The decision of the Zoning Board relies on the 102-foot distance. The Board’s determination is correct based on the plain language of section 240-68D(2) and based on the obvious intent of the section. Section 240-68D(2) requires that the Board take into account “all setbacks” when evaluating a request for a special permit. For Gale to build on the east portion of Parcel E, her home cannot be nearer than 25 feet to Pinecrest Beach Drive per section 240-68A. The east portion of Parcel E effectively has a front lot line for building purposes at the eastern edge of the layout of Pinecrest Beach Drive.
The obvious intent of section 240-68D(2) is to provide relief to those lots whose dimensions, net of setbacks including the 50-foot pond setback, leave little room for construction of a single-family home. The east portion of Parcel E falls into that category. Gale satisfied all the requirements for a special permit under section 240-68D(2):
the depth of the lot is less than 125 feet from the 21-foot contour;
the 102-foot depth of the east portion of Parcel E, minus the 25-foot setback from Pinecrest Beach Road, minus the 50-foot pond setback leaves a building envelope of 27 feet;
the 27-foot envelope is less than the 60-foot maximum building envelope;
Gale intends to build a single-family residence; and
the residence will be more than 30 feet landward from the 21-foot contour.
When all the elements for a special permit have been met this court has no business second-guessing the Board’s discretion in granting the permit.[8] Barlow v. Planning Board of Wayland, 64 Mass.App.Ct. 314, 321 (2005).
ORDER
For the above stated reasons, it is ORDERED that judgment enter AFFIRMING the decision, dated July 21, 2004, of the Falmouth Zoning Board of Appeals, to the extent the decision grants a special permit, and that a declaration enter DECLARING that the east portion of Parcel E, as shown on a plan recorded in plan book 515, page 24, of the Barnstable Registry of Deeds, is, with regard to area, dimensions and frontage under the Town of Falmouth Zoning Bylaw, a buildable lot.

While the court received the testimony of four witnesses, the bulk of the evidence consists of thirty-seven exhibits. In particular Exhibit 14, the Comprehensive List of Stipulations, is most informative.

An Addendum is attached to this decision wherein Addendum A depicts Parcel E as originally laid out, Addendum B depicts Parcel E with the proposed home and septic system and Addendum C sets forth the pertinent sections of the zoning bylaw. [Editor’s Note: Addendums A and B, both drawings, and Addendum C, reproducing portions of the Falmouth Zoning Code, have not been reproduced herein.]

Please see Addendum B.

Please see Addendum B.

Please see Addendum B.

Section 240-66C(2) requires that the lot not be held in common ownership with any adjoining land as of January 1, 1981. For zoning purposes the 1963 subdivision control layout of Pinecrest Beach Drive separated the lobes of Parcel E.

The court casts aside the 1995 Agreement (ex. 9) by Gale and the Selectmen guaranteeing the buildability of Parcel E as something beyond the powers of the Selectmen.

Gale will provide the Town with the added environmental safeguard of locating the residential septic system on the west portion of Parcel E.